**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MARC WATERMAN,<br><br>Plaintiff,<br><br>v.<br><br>MAGELLAN HEALTH, INC., STEVEN J. SHULMAN, SWATI ABBOTT, CHRISTOPHER J. CHEN, KEN FASOLA, PETER A. FELD, MURAL R. JOSEPHSON, SCOTT MACKENZIE, LESLIE V. NORWALK, and GUY P. SANSONE,<br><br>Defendants. | ) | Case No. ______________<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on January 4, 2021 (the "Proposed Transaction"), pursuant to which Magellan Health, Inc. ("Magellan" or the "Company") will be acquired by Centene Corporation ("Parent") and Mayflower Merger Sub, Inc. ("Merger Sub," and together with Parent, "Centene").

2. On January 4, 2021, Magellan's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Centene. Pursuant to the terms of the Merger Agreement, Magellan's stockholders will receive $95.00 in cash for each share of Magellan common stock they own.

3. On February 8, 2021, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Magellan common stock.

9. Defendant Magellan is a Delaware corporation and maintains its principal executive offices at 4801 E. Washington Street, Phoenix, Arizona 85034. Magellan's common stock is traded on the NASDAQ under the ticker symbol "MGLN."

10. Defendant Steven J. Shulman is Chairman of the Board of the Company.

11. Defendant Swati Abbott is a director of the Company.

12. Defendant Christopher J. Chen is a director of the Company.

13. Defendant Ken Fasola is Chief Executive Officer and a director of the Company.

14. Defendant Peter A. Feld is a director of the Company.

15. Defendant Mural R. Josephson is a director of the Company.

16. Defendant Scott MacKenzie is a director of the Company.

17. Defendant Leslie V. Norwalk is a director of the Company.

18. Defendant Guy P. Sansone is a director of the Company.

19. The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

***Background of the Company and the Proposed Transaction***

20. Magellan is a leader in managing the fastest growing, most complex areas of health, including special populations, complete pharmacy benefits, and other specialty areas of healthcare.

21. The Company's customers include health plans and other managed care organizations, employers, labor unions, various military and governmental agencies, and third-party administrators.

22. On January 4, 2021, Magellan's Board caused the Company to enter into the Merger Agreement with Centene.

23. Pursuant to the terms of the Merger Agreement, Magellan's stockholders will receive $95.00 in cash for each share of Magellan common stock they own.

24. According to the press release announcing the Proposed Transaction:

Centene Corporation (NYSE: CNC) and Magellan Health, Inc. (NASDAQ: MGLN) today announced that they have entered into a definitive merger agreement under which Centene will acquire Magellan Health for $95 per share in cash for a total enterprise value of $2.2 billion. The transaction, which was unanimously approved by the Boards of Directors of both companies, will broaden and deepen Centene's whole health capabilities and establish a leading behavioral health platform. The combined platform lays the foundation by which the company will continue to invest and innovate for its members, enabling improved health outcomes and faster, diversified growth. . . .

Organization and Leadership

Ken Fasola, CEO of Magellan Health, and other members of Magellan Health's leadership team have agreed to join Centene to provide continuity to Magellan Health's strategy and leadership.

Timing and Required Approvals

The transaction is subject to clearance under the Hart-Scott Rodino Act, receipt of required state regulatory approvals, the approval of the definitive merger agreement by Magellan Health's stockholders and other customary closing conditions. In connection with the transaction, affiliates of Starboard Value LP, which own approximately 9.4% of Magellan Health's outstanding shares of common stock in the aggregate, have entered into a merger support agreement whereby they have agreed to vote their shares in favor of the transaction at Magellan Health's special meeting.

The transaction is not contingent upon financing. Centene intends to primarily fund the cash portion of the acquisition through debt financing, and J.P. Morgan has provided a $2.381 billion bridge financing commitment. Upon closing, Centene expects its debt-to-capital ratio to be in the low 40% range, and intends to use its strong earnings and cash flows to achieve its targeted debt-to-capital ratio in the upper 30% range within 12 to 18 months post close.

Centene and Magellan Health expect to complete the transaction in the second half of 2021.

Advisors

Allen & Company LLC, J.P. Morgan Securities LLC and Barclays are serving as financial advisors to Centene, and Skadden, Arps, Slate, Meagher & Flom LLP is serving as its legal counsel. Goldman Sachs & Co. LLC and Guggenheim Securities, LLC are serving as financial advisors to Magellan Health, and Weil, Gotshal & Manges LLP is serving as its legal counsel.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

25. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

26. As set forth below, the Proxy Statement omits material information.

27. First, the Proxy Statement omits material information regarding the Company's financial projections.

28. The Proxy Statement fails to disclose, for each set of projections: (i) all line items used to calculate EBITDA and unlevered free cash flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

29. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

30. Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisors, Goldman Sachs & Co. LLC ("Goldman") and Guggenheim Securities, LLC ("Guggenheim").

31. With respect to Goldman's Illustrative Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) the individual inputs and assumptions underlying the discount rates and perpetuity growth rates used in the analysis; (iii) Goldman's basis for applying a range of terminal year EBITDA exit multiples of 6.5x to 8x; (iv) the terminal values used in the analysis; (v) the Company's net debt; and (vi) the total number of fully diluted shares of Company common stock.

32. With respect to Goldman's Illustrative Present Value of Future Share Price Analysis, the Proxy Statement fails to disclose: (i) Goldman's basis for applying illustrative NTM P/E multiples ranging from 16.0x to 24.0x; and (ii) the individual inputs and assumptions underlying the discount rate of 8.5%.

33. With respect to Goldman's Premia Paid Analysis, the Proxy Statement fails to disclose: (i) the transactions observed in the analysis; and (ii) the premiums paid in the transactions.

34. With respect to Goldman's Selected Precedent Transactions Analysis, the Proxy Statement fails to disclose: (i) the values of the transactions; and (ii) the closing dates of the transactions.

35. With respect to Guggenheim's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) the individual inputs and assumptions underlying the discount rates and perpetuity growth rates used in the analysis; and (iii) the terminal values used in the analysis.

36. With respect to Guggenheim's Selected Precedent Merger and Acquisition Transactions Analysis, the Proxy Statement fails to disclose: (i) the values of the transactions; and (ii) the closing dates of the transactions.

37. With respect to Guggenheim's Selected Publicly Traded Companies Analysis, the Proxy Statement fails to disclose Guggenheim's basis for selecting a reference range of trading price/adjusted earnings per share multiples of 13.0x-18.0x.

38. With respect to Guggenheim's Wall Street Equity Research Analyst Stock Price Targets analysis, the Proxy Statement fails to disclose: (i) the price targets observed in the analysis; and (ii) the sources thereof.

39. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

40. Third, the Proxy Statement fails to disclose the timing and nature of the past services Goldman provided to the Company and its affiliates.

41. The omission of the above-referenced material information renders the Proxy Statement false and misleading.

42. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## **COUNT I**

### **Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Magellan**

43. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

44. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Magellan is liable as the issuer of these statements.

45. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

46. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

47. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

48. The Proxy Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

49. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

50. Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act Against the Individual Defendants

51. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

52. The Individual Defendants acted as controlling persons of Magellan within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Magellan and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after

these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

55. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or

necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: February 16, 2021

**RIGRODSKY LAW, P.A.**

By: */s/ Gina M. Serra*

Seth D. Rigrodsky (#3147)
Gina M. Serra (#5387)
Herbert W. Mondros (#3308)
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: sdr@rl-legal.com
Email: gms@rl-legal.com
Email: hwm@rl-legal.com

*Attorneys for Plaintiff*